IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JAMES G. BLAKELY, | ) | C/A No. 4:07-2012-MBS-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| WARDEN, BROAD RIVER | ) | |
| CORRECTIONAL | ) | |
| INSTITUTION | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, James G. Blakely ("petitioner/Blakely"), a pro se prisoner, seeks habeas relief

pursuant to 28 U.S.C.  2254.  This matter is before the Court on the respondent's motion for

summary judgment (document # 39).[1]

The petitioner filed this petition for a writ of habeas corpus on July 5, 2007.[2]  On December

6, 2007, the respondent filed a motion for summary judgment, along with supporting memorandum

and exhibits.  The undersigned issued an order filed December 6, 2007, pursuant to Roseboro v.

Garrison, 528 F.2d 309 (4th Cir. 1975), advising the petitioner of the motion for summary judgment

procedure and the possible consequences if he failed to respond adequately.  On January 4, 2008, the

petitioner filed a response to the respondent's motion for summary judgment.

---

[1]This habeas corpus case was automatically referred to the undersigned United States Magistrate
Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC.
Because this is a dispositive motion, this report and recommendation is entered for review by the
district judge.

[2]This date reflects that the petition was dated. (Pet.  at 16.)

# I. PROCEDURAL HISTORY

The petitioner is currently housed in the Lee Correctional Institution of the South Carolina Department of Corrections ("SCDC"). In July 1998, the petitioner was indicted for murder and assault and battery with intent to kill ("ABIK") for shooting two people. (App. 704-07.) At trial, the petitioner was represented by attorney Larry Crane. From January 18-20, 1999, the petitioner was tried before a jury with the Honorable Lee S. Alford presiding. The jury convicted the petitioner of the lesser included offenses of voluntary manslaughter and assault and battery of a high and aggravated nature ("ABHAN"), and Judge Alford sentenced him to thirty years for voluntary manslaughter and ten years for the ABHAN, to run consecutively. (App. 698-701.) The petitioner appealed his conviction and sentence.

Robert M. Pachak, represented the petitioner on appeal and he filed an Anders[3] brief in the South Carolina Supreme Court and a motion to be relieved as counsel. (Resp.'t's Mem. Supp. Summ. J. Mot Ex. 2.) He raised the following issue: "Whether the trial court erred in overruling defense counsel's objection to a self-defense charge which shifted the burden of proof to appellant?" The petitioner filed a pro se supplemental brief raising the following issues:

> 1) Whether the trial court erred in failure to provides [sic] appellant with arraignment for the charge of murder?
>
> 2) Whether the prosecution failed to notify appellant of indictments and charges against him?
>
> 3) Whether the trial court erred in denying appellant's counsel motion for dismissal of . . . charges for lack of speedy trial?
>
> 4) Whether the trial court [sic] instruction on malice was unconstitutional?

---

[3] Anders v. California, 386 U.S. 738, 87 S. Ct. 1396 (1967).

5)  Whether the trial court erred in denying defense counsel the criminal, record of Mr. John Willie Henderson, Jr.?

6)  Whether the trial court erred in charging self-defense?

7) Whether the trial court erred in permitting the prosecution to enter appellant's statement into evidence in violation of the Edward's rule?

8)  Whether the trial court erred on displaying the deceased autopsy photographs and placing them into evidence?

9) Wether the trial court erred in failure to dismiss juror from serving on selected jury?

10) Whether the appellant's counsel was ineffective in defending the appellant?

11) Whether the prosecution's witnesses committed perjury on the witness stand?

12) Whether the appellant was denied due process of law and equal protection of law at his preliminary hearing?

13) Whether the indictments and warrants were defective and illegal?

(*Id*. Ex. 3 at 4.).  On September 26, 2000, the South Carolina Supreme Court dismissed the appeal and granted counsel's motion to be relieved.  State v. Blakely, 2000-MO-121 (S.C.S.Ct. filed Sept. 26, 2000).  The petitioner filed a pro se motion for rehearing which the court denied on November 3, 2000.  On November 3, 2000, the remittitur was sent down. The petitioner then filed another pro se motion "for reconsideration of jurisdiction of remittitur" which the court denied on December 7, 2000.

On February 21, 2001, the petitioner filed an application for post-conviction relief ("PCR") raising twenty-seven grounds of ineffective assistance of counsel:

1)  Failure to take exception to insufficient notice of indictments.

3

2)  Failure to take exception to indictment defect.

3)  Failure to take exception to denial of exculpatorial [sic] evidence.

4)  Failure to request proof of death.

5)  Failure to request specific instruction on self-defense charge regarding appearances and words accompanied by hostile act.

6)  Failure to take exception to burden shifting charge on self-defense.

7)  Failure to request the charge of simple assault and battery, and accidential [sic] shooting.

8)  Failure to safeguard appellant's rights to a fair and impartial trial.

9)  Failure to take exception to misstatement of facts by the trial judge.

10)  Failure to take exception to insufficiency of trial photographs of alleged victim.

11)  Failure to take exception to the violation of the Edward rule.

12)  Failure to take exception to the trial judge's charge regarding intent.

13)  Illegal search and seizure.

14)  Failure to take exception to prosecution misstatement of facts in closing argument.

15)  Failure to take exception to prosecution being sole witness before the grand jury.

16)  Failure to take exception to irrelevant testimony.

17)  Failure to take exception to trial judge [sic] improper arraignment.

18)  Failure to take exception to trial judge [sic] excessive charge on malice.

19)  Failure to consult with appellant concerning the lesser included offense of manslaughter.

20)  Failure to take exception to defects and irregularities at the preliminary hearing.

21) Failure to take exception, to trial judge [sic] failure to instruct the jury on the law of retreat.

22)  Failure to subpoena the witnesses in Appellant's favor.

23) Failure to take exception to warrantless arrest.

24) Failure to subpoena the criminal record of deceased.

25)  Failure to uphold attorney/client privileges.

26)  Failure to take exception to the trial judge [sic] erroneous instruction on the law of self-defense.

27) Trial counsel's performance was ineffective because counsel failed to perfect the appeal.

(App. at 556-68.). On June 25, 2002, an evidentiary hearing was held by the Honorable Joseph J. Watson.  Judge Watson denied relief on all but one issue.  (App. at 691-92, 694.)   On August 30, 2002, he entered an order granting the petitioner relief  "on the sole issue of the failure of trial counsel to object to [the ABHAN victim's] prejudicial and inflammatory testimony." (App. 696-97.) The petitioner filed a pro se motion "to amend his complaint" on September 17, 2002, seeking a ruling on the issues that the PCR Court did not adjudicate.

On September 23, 2002, the state filed a notice of appeal and petitioned the South Carolina Supreme Court for review of the PCR Court's order.  On January 27, 2003, the petitioner asked the court to rule on the issues he raised in the PCR Court.  The clerk of court responded telling him that, because he was represented by counsel, it could not entertain pro se submissions.  The petitioner was represented by attorney Wanda Haile.

While the case was pending in the South Carolina Supreme Court, the petitioner moved to dismiss his counsel on the ground that she had a conflict of interest.  The court denied the motion.

5

The petitioner then moved again to have counsel relieved on the ground that she "failed to properly represent respondent, [and] also . . . allowed a miscarriage of justice to stand before the Court without making the Court aware," contending specifically that counsel failed to request to have the PCR judge rule on all the issues before him.  The court granted that motion and the petitioner proceeded pro se.

In his pro se brief, the petitioner raised the following issues, quoted verbatim:

1)  Whether the trial court charged an unconstitutional charge of voluntary manslaughter?

2)  Whether respondent was denied exculpatory evidence?

3) Whether unlawful search and seizure of respondent in a third party's home was a violation of respondent's Fourth Amendment and there were not consent?

4)  Whether the court should has charged simple assault and battery and accidental shooting?

5) Whether trial's counsel was ineffective for failure to establish the chain of custody for the gun, clotheing and projectile?

6)  Whether trial's counsel was ineffective for failure to charge involuntary manslaughter where there were testimony of the lesser included offense of involuntary manslaughter?

7) Whether counsel was ineffective for failure to object to trial judge 'excessive charge on malice releaving the prosecution of his burden of proof?

8)  Whether respondent's appellate counsel was ineffective for failure to raise [trial judge's] failure to charge involuntary manslaughter were there were testimony of the lesser included offense of involuntary manslaughter?

9)  Whether trial counsel failed to safeguard respondent's rights to a fair and impartial jury?

10)  Whether the evidence presented at respondent's trial were insufficient due to the fact that the evidence were not proven to belong to respondent?

6

11) Whether counsel was ineffective for failure to subpoena the medical record of Ms. Sarah Ann Moss, the EMS crew and the physician whom serviced Ms. Moss?

12) Whether trial's counsel was ineffective for failure to takes exception to trial judge improper waiver of arraignment?

13) Whether respondent's United States constitutional rights and South Carolina constitutional rights were violated for lack of notice of indictments?

14) Whether trial's counsel was ineffective for not taking exception to the prosecutor being the sole witness before the grand jury?

15) Whether the appellate's counsel was ineffective for failure to raise trial's counsel exception on the burden shifting charge on selfdefense and trial judge refusal to charge that state has the burden of disproving self-defense?

16) Whether respondent's statement was in violation of respondent's Miranda rights?

17) Whether missing portion of trial's transcript prejudiced respondent?

18) Whether appellate's counsel was ineffective for failure to raise exception of trial's counsel on photographs of deceased.

19) Whether trial's counsel was ineffective for failure to investigates respondent's case?

20) Whether trial's counsel was ineffective for failure to takes exception to prosecutorial misconduct?

On September 7, 2004, the Supreme Court of South Carolina granted the state's petition for writ of certiorari and reversed the PCR court's ruling. Blakely v. State, 602 S.E.2d 758 (S.C. 2004). The petitioner moved for a rehearing which the court denied on October 6, 2004. On October 7, 2004, the petitioner filed two additional motions in the South Carolina Supreme Court to remand the case to the PCR court "for the proper action and rulings" and alleging grand jury irregularities. The clerk of court informed the petitioner that his case had been remitted to the trial court and that the supreme court no longer had jurisdiction.

On September 22, 2005, the South Carolina Supreme Court remanded this case to the circuit court for a ruling on the remaining allegations raised by the petitioner at the first PCR hearing which were not addressed in Judge Watson's order.

On November 10, 2004, the petitioner filed a second PCR application raising the following issues, quoted verbatim:

1)  Whether the trial's counsel was ineffective for failure to object to the unconstitutional charge of voluntary manslaughter?

2)  Whether the Appellate's [sic] counsel was ineffective for failure to raise trial counsel [sic] prejudicial photographs exception submitted into evidence?

3)  The trial court did not have subject matter jurisdiction to hear applicant's case.

4)  Whether trial's counsel was ineffective for failure to take exception for the denial of discovery of John Willie Henderson, Jr.'s criminal records?

5)  Whether the trial court erred in denying applicant's counsel motion for dismissal of said charges for lack of speedy trial?

6)  Whether the court should has charged simple assault & battery and accidental shooting?

7)  Whether trial counsel was ineffective for failure to object to the chain of custody for the gun, clothing and projectile?

8)  Whether counsel was ineffective for failure to object to trial judge's excessive charge on malice, releaving the prosecution of his burden of proof?

9)  Applicant's appellate counsel was ineffective for failure to raise trial's counsel exception to trial's judge failure to charge involuntary manslaughter?

10)  Whether trial counsel failed to safeguard applicant's rights to a fair and impartial jury?

11)  Whether the evidence presented at applicant's trial was insufficient due to the fact that the evidence was not proven to belong to applicant?

12) Whether counsel was ineffective for failure to subpoena the medical records of Ms. Sarah Ann Moss and the EMS crew and physician?

13) Whether counsel was ineffective for failure to take exception to trial judge improper waiver of arraignment?

14) Whether applicant United States Constitutional Rights and South Carolina Constitutional Rights were violated for lack of notice of indictments?

15) Whether trial's counsel was ineffective for not taking exception to the prosecutor being the sole witness before the grand jury?

16) Whether Appellate's Counsel was ineffective for failure to raise trial's counsel exception on the burden shifting charge on self-defense and trial judge refusal to charge that state has the burden of disproving self-defense?

17) Whether Applicant's statement was in violation of applicant Miranda rights?

18) Whether missing portion of trial's transcript prejudiced applicant?

19) Whether trial's counsel was ineffective for failure to take exception to trial judge abuse of discretion concerning trial photographs of the deceased?

20) Whether trial's counsel was ineffective for failure to investigates applicant case?

21) Whether trial's counsel was ineffective for failure to take exception to prosecutorial misconduct?

22) Whether unlawful search and seizure of applicant in a third party's home was a violation of applicant's Fourth Amendment there was not a search warrant, arrest warrant or consent?

23) Whether post-conviction relief's counsel was ineffective for failure to assures that the PCR's judge rule on all the issues that were properly raised and the issues of Appellate's Counsel be heard?

(Resp's Mem. Supp. Summ. J. Mot. Ex. 25.)    On March 21, 2005, the court dismissed the petitioner's second PCR application as untimely under S.C. Code § 17-27-45 and successive and on June 17, 2005, a final order of dismissal was filed.

The petitioner filed a notice of appeal from the final order to the South Carolina Supreme Court.  On June 30, 2005, the Supreme Court asked the petitioner to provide an explanation pursuant to Rule 227(c), SCACR, as to why his appeal should be considered.  On July 14, 2005, the petitioner submitted an explanation.  On September 22, 2005, the Supreme Court issued an order: 1) concluding the Applicant's second PCR application (2004-CP-23-7467) was properly dismissed and 2) remanding the matter for the PCR court to rule upon the allegations raised by the petitioner at the first PCR hearing.

On April 7, 2006, the Honorable Edward W. Miller denied all issues raised at the petitioner's June 25, 2002, PCR hearing.  The petitioner filed a  Rule 59 motion filed which Judge Miller denied on May 8, 2006.  The petitioner filed another timely appeal.  On June 14, 2006, the petitioner filed a pro se petition for writ of certiorari to the South Carolina Supreme Court raising the following questions for certiorari, quoted verbatim:

> 1)  Whether the trial court charged an unconstitutional charge of voluntary manslaughter?
>
> 2)  Whether appellant was denied exculpatory evidence?
>
> 3) Whether trial counsel should have taken exception to unlawful search and seizure of appellant in a third party's apartment (resident) and there was not any consent or search warrant?
>
> 4) Whether trial court erred in denying appellant's motion for speedy trial?
>
> 5)  Whether trial counsel should had requested a charge of simple assault and battery and accidental shooting? Should the trial judge had charged the same?
>
> 6)  Whether trial counsel was ineffective for failure to take exception to the chain of custody?  For the gun, clothing and projectile?
>
> 7)  Whether counsel was ineffective for failure to object to trial court excessive charge on malice releaving the prosecution of his burden of proof?

10

8)  Whether appellant's appellate counsel was ineffective for failure to raise trial counsel's exception to trial judge refusal to charge involuntary manslaughter?

9)  Whether trial counsel failed to safeguard appellant's right to a fair and impartial jury?

10)  Whether trial counsel should had taken exception to insufficiency of the evidence that were not proven to belong to appellant?

11)  Whether counsel was ineffective for failure to subpoena the medical records of Ms. Sarah Ann Moss, the medical crew (EMS) and the physician whom serviced Ms. Moss?

12)  Whether trial counsel was ineffective for failure to takes exception to trial judge improper waiver of arraignment?

13)  Wether appellant's United States constitutional rights and South Carolina constitutional right were violation for lack of notice of indictments?

14)  Whether trial counsel was ineffective for not takes exception to the prosecutor being the sole witness before the grand jury?

15)  Whether trial counsel was ineffective for failure to takes exception to trial judge submitting appellant's statement into evidence?

16)  Whether appellate counsel was ineffective for failure to raise trial counsel exception to trial judge refusal to charge requested charge of the state had the burden of disproving self-defense and the trial judge transferred the burden of proof to approve appellant?

17)  Whether appellant's statement was in violation of the Edward's rule and Miranda right?

18)  Whether portion of trial transcript that were missing prejudiced appellant's case?

19)  Whether trial counsel was ineffective for failure to investigate appellant's case?

20)  Whether trial counsel was ineffective for failure to takes exception to prosecution misconduct and misstatement of the facts and law?

11

21)  Whether trial counsel was ineffective for failure to consult with appellant on the issue of voluntary manslaughter and going against appellant's wishes on voluntary manslaughter?

22)   Whether trial counsel was ineffective for failure to take exception to on the instruction of retreat?

23)  Whether trial counsel violated attorney/client privilege?

24)   Whether trial counsel was ineffective for failure to takes exception to prosecution introduction of perjured testimony?

25)  Whether trial counsel was ineffective for failure to takes exception to defected indictments?

26)  Whether trial counsel was ineffective for failure to takes exception to defected arrest warrants?

27) Whether trial counsel was ineffective for failure to request proof of death?

28) Whether trial counsel was ineffective for failure to takes exception to trial judge misstatement of facts and abuse of discretion?

29)Whether trial counsel was ineffective for failure to takes exception to insufficiency of the alleged deceased's photographs?

30) Whether trial counsel was ineffective for failure to takes exception to prejudicial testimony and not challenging such prejudicial testimony?

31) Whether trial counsel was ineffective for failure to takes exception to warrantless arrest?

(Pet. 3-4.)  On July 20, 2006, the South Carolina Supreme Court relieved PCR counsel  and allowed the petitioner to proceed pro se.   On January 18, 2007, the petitioner filed an "Answer to Respondent's Return on Writ of Certiorari."  On June 7, 2007, the South Carolina Supreme Court denied the petition and the remittitur was sent down on June 25, 2007.

## II. FACTS

12

The following facts are set forth in <u>Blakeley v. State</u>, 602 S.E.2d 758 (S.C. 2004):

> [The petitioner] was charged with murder and assault and battery with intent to kill (ABIK) for wounding his girlfriend Sarah Ann Moss (a.k.a. "Ann") and killing her friend John Henderson (a.k.a. "Steve") after a domestic dispute earlier in the day. [The petitioner] shot both victims in front of Ann's house as they were getting out of a car. Steve managed to drive off after being shot but was found dead near his car about a half-mile away.

> [The petitioner] claimed self-defense on the murder charge. He testified he saw Steve and Ann kissing in the car. When he confronted them, Steve came at [the petitioner] with a knife. To the contrary, eye-witnesses testified they saw Steve put his hands up immediately before being shot. No one saw a knife and no knife was ever found at the scene or in Steve's car. In his statement to police, [the petitioner] did not mention that Steve had a knife when [the petitioner] shot him. [The petitioner] claimed he told detectives about the knife but they omitted it from his statement. As a defense to ABIK, [the petitioner] testified he accidentally shot Ann when she came up behind him after he shot Steve.

> The jury found [the petitioner] guilty of the lesser offenses of voluntary manslaughter and assault and battery of a high and aggravated nature. He was given consecutive sentences of thirty years and ten years.

## III. PETITIONER'S GROUND FOR RELIEF

On July 5, 2007, the petitioner filed this habeas petitioner raises the following grounds,

verbatim:

> **Ground One:** Whether the Court charged an unconstitutional charge of voluntary manslaughter?

> **Ground Two:** Whether Appellant was denied exculpatory evidence by the Court and prosecution?

> **Ground Three:** Whether unlawful search and seizures of Appellant in a third party's home is Fourth Amendment viol.?

13

**Ground Four:**  Whether the trial court erred in denying Appellant's a fast and speedy trial?

**Ground Five:**  Appellant's statement was achieved in violation of Miranda and the Edward's Rule.

**Ground Six:**  Trial counsel was ineffective for failure to investigate Appellant's case.

**Ground Seven:** Trial counsel was ineffective for failure to take exception to insufficient notice of indictments.

**Ground Eight:**  Trial counsel was ineffective for failure to take exception to defective indictments.

**Ground Nine:**  Trial counsel was ineffective for failure to request a charge of simple assault and battery and accidental shooting.

**Ground Ten:**  Trial counsel was ineffective for failure to take exception to the chain of custody for the gun, the clothing and the projectile.

**Ground Eleven:**  Trial counsel was ineffective for failure to takes exception to trial judge excessive charge on Malice releasing the prosecution of his burden of proof.

**Ground Twelve:**  Appellant's appellate counsel was ineffective for failure to raise trial counsel exception to trial judges refusal to charge involuntary manslaughter. (Tr. p. 533, lines 4-6).

**Ground Thirteen:**  Appellant's appellant counsel was ineffective for failure to raise trial's counsel exception on trial judge refusal to charge requested charge that the State had the burden of disproving self-defense.

**Ground Fourteen:**  Trial counsel was ineffective for failure to safeguard Appellant's right to a fair and impartial jury.

**Ground Fifteen:**  The evidence produced at Appellant's trial were insufficient because the evidence fell within hearsay evidence and was not proven to belong to Appellant.

**Ground Sixteen:**  Trial counsel was ineffective for failure to subpoena the medical records of Ms. Sarah Moss; the EMS crew and the physician who examined victim Moss.

**Ground Seventeen:** Trial counsel was ineffective for failure to take exception to trial judge's improper waiver of arraignment.

14

**Ground Eighteen:** Trial counsel was ineffective for failure to take exception to the prosecutor being the sole witness before the grand Jury.

**Ground Nineteen:** Appellant's appellate counsel was ineffective for failure to raise trial counsel exception on the burden shifting charge on self-defense.

**Ground Twenty:**  Missing portion of trial transcript, which prejudice Appellant's direct appeal.

**Ground Twenty-One:**  Preliminary hearing.  Trial counsel was ineffective for failure to obtain a copy of the preliminary hearing transcript.

**Ground Twenty-Two:** Trial counsel was ineffective for not taking exception to lack of proof of death.

**Ground Twenty-Three:**  Trial counsel was ineffective for failure to raise trial judge abuse of discretion regarding speedy trial.

**Ground Twenty-Four:**  Trial counsel was ineffective for failure to take exception to prosecution misconduct, and perjured testimony.

**Ground Twenty-Five:**  Trial counsel was ineffective for failure to take exception to trial judge submitting Appellant's statement into evidence.

**Ground Twenty-six:**  Trial counsel was ineffective for failure to consult with Appellant on the issue of voluntary manslaughter.

**Ground Twenty-Seven:**  Trial counsel was ineffective for failure to take exception on the charge of retreat.

**Ground Twenty-Eight:** Trial counsel was ineffective for failure to take exception to defective arrest warrants.

**Ground Twenty-Nine:**  Trial counsel was ineffective for failure to take exception to trial judge misstatement of fact, law and abuse of discretion.

**Ground Thirty:** Trial counsel was ineffective for failure to take exception to prejudicial testimony.

**Ground Thirty-One:**  Perjury and conspiracy from prosecution and trial counsel.

(Pet. and Supp. Mem.)

15

## IV.  SUMMARY JUDGMENT

As stated above, on July 25, 2007, the respondent filed a return and memorandum of law in support of their motion for summary judgment and petitioner filed a response in opposition and his own motion for summary judgment on January 4, 2008.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.   If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e);  Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving

16

party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In Celotex, the Court held the defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner had failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

## V. STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Under § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

As "a determination of a factual issue made by a State court shall be presumed to be correct," a petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). With respect to reviewing the state court's application of federal law, " '[a] federal habeas court may grant the writ if the state court identifies the correct governing principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)). Further, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal

law is not, in all instances, objectively unreasonable." *Id.* "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." McHone v. Polk, 392 F.3d 691, 719 (4th Cir. 2004).

## VI. DISCUSSION AS TO PROCEDURAL BAR

### A. Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

### 1. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B) (I) there is either an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.

18

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.  The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal.  SCAR 207; Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq.  A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90.  Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts.  A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or

through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977); Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983).

### 2. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and

20

while the attention of the appellate court is focused on his case. Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997)(*citing* Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991); Teague v. Lane, 489 U.S. 288,297-98 (1989); and George v. Angelone, 100 F.3d 353,363 (4th Cir. 1996).

### 4. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray

21

v. Carrier, 477 U.S. 478 (1986). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* at 478.

Absent a showing of "cause," the court is not required to consider "actual prejudice." Turner v. Jabe, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. Murray v. Carrier, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. United States v. Frady, 456 U.S. 152 (1982).

In Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. *See* Karsten v. Kaiser Foundation Health Plan, 36 F.3d 8, 11 (4th Cir. 1993). Therefore, once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

## VII. EXHAUSTION

The respondent contends that some of the petitioner's grounds are barred from federal habeas review. Although the petitioner raised all of his habeas grounds in his PCR proceeding, the respondent contends that Grounds One, Two, Four, part of Nine, Twelve, Thirteen, and Nineteen were not properly raised in the petitioner's PCR proceeding or not properly preserved for appellate

review in state court and therefore are barred from review.  The undersigned disagrees and finds that not all of these issues are barred.

In Grounds Two and Four,  the petitioner raises trial court errors.  He raised these issues in his both his direct appeal in his pro se brief and in PCR proceeding.  While Grounds Two and Four may not have been properly raised in the PCR proceeding, these issues were proper for direct appeal.  Accordingly, Grounds Two and Four are not barred.  The issue raised in Ground One is whether the trial court erred in giving a jury instruction on voluntary manslaughter.  Because trial counsel requested and was granted this instruction, the petitioner states he raised this issue below as an ineffective assistance of counsel claim.  (Pet. at 6.)  Although it appears that issue is also barred, the undersigned will address this issue on the merits.

In Grounds Twelve, Thirteen, and Nineteen, the petitioner raises claims of ineffective assistance of appellate counsel.  The PCR judge did not address any issues relating to the ineffective assistance of appellate counsel.  Because petitioner did not properly preserve these issues, the South Carolina Supreme Court would not have been able to review them. McCullough v. State, 464 S.E.2d 340, 341 (S.C.1995); Pruitt v. State, 423 S.E.2d 127, n. 2 (S.C. 1992)(holding issue must be raised to and ruled on by the PCR judge in order to be preserved for review).  Accordingly, these issues are barred from habeas review.  Coleman v. Thompson,  501 U.S. 722 (1991).

When a state prisoner has defaulted his claims in state court, habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. at 750.  The petitioner argues that his PCR counsel's ineffectiveness resulted in the procedural default.  However, ineffective PCR

23

counsel cannot provide cause to excuse the default as the petitioner does not have a constitutional right to effective assistance of PCR counsel. *Id.* at 752 (rejecting finding cause to excuse default on ineffective assistance of counsel where no constitutional guarantee of effective assistance existed); Mackall v. Angelone, 131 F.3d 442, 448 (4th Cir.1997) ("in order to constitute cause, attorney error must amount to constitutionally ineffective assistance of counsel and that this standard could not be satisfied in the absence of a constitutional right to counsel").    Accordingly, Grounds Twelve, Thirteen, and Nineteen were not properly raised in the petitioner's PCR proceedings or not properly preserved for appellate review and therefore are barred from habeas review.  Further, the remaining grounds should be dismissed on the merits as discussed below.

## VIII. MERITS

**Ground One**

In Ground One, the petitioner alleges the trial court erred in giving an instruction of voluntary manslaughter.  The petitioner contends there was not any evidence of heat of passion.  (Pet. 6.)  However, trial counsel requested an instruction on voluntary manslaughter as a lesser included offense and the trial court granted the request.  (App. 672-674.)   This issue was not raised at trial or on direct appeal and, therefore, is procedurally barred. Petitioner attempted to raise this issue in his PCR appeal and in a second PCR. The state court denied the claims as procedurally defaulted.  Also, this issue was raised in the petitioner's PCR proceeding in the context of a trial court error and issues that relate to trial court error cannot be raised in state PCR proceedings absent a claim of ineffective assistance of counsel.   Drayton v. Evatt, 430 S.E.2d 517, 520 (S.C. 1993) (holding in PCR petitioner cannot assert any issues that could have been raised at trial or on direct appeal).

Petitioner fails to show cause and prejudice to overcome the default. Thus, this claim of trial court error should be dismissed.

To the extent petitioner raised this claim as a claim of ineffective assistance of counsel, this issue has no merit. In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Id. at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

"Voluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation." State v. Cole, 525 S.E.2d 511 (S.C. 2000). In determining whether voluntary manslaughter should be charged as a lesser offense of murder, the court must view the evidence in the light most favorable to the defendant. The charge need not be given "where it clearly appears that there is no evidence whatsoever tending to reduce the crime from murder to manslaughter." State v. Pittman, 647 S.E.2d 144 (S.C. 2007) (internal citation omitted).

The sudden heat of passion, upon sufficient legal provocation, which mitigates a felonious killing to manslaughter, while it need not dethrone reason entirely, or shut out knowledge and volition, must be such as would naturally disturb the sway of reason, and render the mind of an ordinary person incapable of cool reflection, and produce what, according to human experience, may

25

be called an uncontrollable impulse to do violence." <u>State v. Byrd</u>, 474 S.E.2d 430, 432 (S.C. 1996) (internal quotations omitted). Although words alone may not constitute sufficient legal provocation, words accompanied by some overt, threatening act may be sufficient. Voluntary manslaughter is properly charged when there was evidence that the decedent approached the defendant, reached into his pocket, and said "I'm come to kill you." <u>State v. Jackson</u>, 389 S.E.2d 650 (S.C. 1990). Here, the petitioner testified that he after he found his girlfriend kissing the decedent, the decedent got out of his car with a knife, moved towards the petitioner, and stated he was "tired of this shit." (App. 396, 398, 428.) The decedent's actions and words would support a charge of voluntary manslaughter. Therefore, trial counsel was not deficient for requesting a charge on voluntary manslaughter. Further, the petitioner has not shown prejudice. Accordingly, this issue is without merit.

**Ground Two**

In Ground Two, the petitioner asserts that the trial court denied his request for the disclosure of the victim's criminal record.[4] As stated above, the petitioner raised this issue in his pro se brief on direct appeal and in his PCR proceeding. The issue was not properly before the PCR Court as issues that relate to trial court error cannot be raised in state PCR proceedings absent a claim of ineffective assistance of counsel. <u>Drayton v. Evatt</u>, 430 S.E.2d 517, 520 (S.C. 1993) (holding in PCR petitioner cannot assert any issues that could have been raised at trial or on direct appeal). However, the petitioner did raise this issue in his pro se brief in his direct appeal which the state court dismissed.

---

[4]This issue is also raised in the context of ineffective assistance of counsel claim, as discussed <u>infra</u> in Ground Six.

During the trial, trial counsel requested the criminal records of the decedent.  The trial court questioned the state about the decedent's record and the state disclosed the record of the decedent which consisted of solely of one conviction for driving under the influence.  (App. 220.)  Thus, trial counsel requested disclosure of the decedent's record and the trial court granted the request and required the state to disclosure it.  The trial court did not deny the request.  Accordingly, the petitioner's argument is clearly without merit.

**Ground Three**

In Ground Three, the petitioner contends that he was arrested without consent or an arrest warrant at his brother-in-law's apartment where he was a guest.  The petitioner did not raise this issue at trial.[5]  This issue was raised as a claim of ineffective assistance of trial counsel in the petitioner's PCR action for failure to raise an objection.  The PCR court found no error and held that the petitioner lacked standing to challenge whether the resident of the apartment had consented to the search of the apartment. (PCR Order at 14.)   Further, the PCR court also found that the arrest warrants were part of the record and indicate the petitioner was arrested on January 2, 1998, the day the arrest warrants were served. (*Id*. 14-15.)

As for the searches, the record reflects that there was an initial search of the apartment where the petitioner had been a guest which was conducted with the consent of the lessee of the apartment.  (App. 292.)   The police did not discover the murder weapon, a gun, in that search.  However, the police later learned from the petitioner that the gun was "stuck inside the mattress down in the springs."  (App. 296.)  The police attempted to obtain consent for a second search but they were

---

[4]Trial counsel testified at the PCR hearing that there was a valid search warrant for the apartment where the petitioner was staying.  (App. 666-678.)  The search warrant was introduced as Exhibit 2 at the PCR hearing. (App. 667.)

unable to contact the lessee.  Based upon the petitioner's statement, the police obtained a search warrant to search the apartment a second time. (*Id.*)

The Fourth Amendment guarantees individuals the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV.  To show a violation under the Fourth Amendment, a defendant must show that they had a legitimate expectation of privacy in the place searched. Rakas v. Illinois, 439 U.S. 128, 143 (1978). A legitimate expectation of privacy is both subjective and objective in nature: the defendant must show 1) he had a subjective expectation of not being discovered, and 2) the expectation is one that society recognizes as reasonable. Oliver v. United States, 466 U.S. 170, 177(1984) (*citing* Katz v. United States, 389 U.S. 347, 361 (1967).  The United States Supreme Court has held that an overnight guest has a reasonable expectation of privacy in another's home.  Minnesota v. Olson, 495 U.S. 91 (1990).  Therefore, the petitioner may have had a legitimate expectation of privacy in the apartment.  However, the lessee of the apartment consented to the initial search and a search warrant was obtained for the second search.

In Georgia v. Randolph, 547 U.S. 103 (2006), the defendant moved to suppress evidence discovered during a search of a marital residence based on his wife's consent. The United States Supreme Court held that officers could not search a house pursuant to third-party consent over a suspect's objections but narrowly drafted the opinion to apply only where the suspect is physically present and objects.  Randolph requires an express objection by a present cotenant. There is no evidence that the petitioner objected to the consent given for the initial search.  Further, there was a search warrant for the second search.

As for the arrest warrants, the petitioner merely contends there was not an arrest warrant. (Pet. 19.)   However, a copy of the arrest warrant is in the record.  (App. 288; 705.)  Accordingly,

the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this ground is without merit.

**Ground Four**

In Ground Four, the petitioner asserts that he was denied his right to a fast and speedy trial. Although raised in his PCR proceedings as an ineffective assistance of counsel claim, this issue was also raised in the petitioner's pro se brief in his direct appeal as trial court error. The PCR court found this issue was a direct appeal issue and not cognizable in a PCR action pursuant to S.C. Code Ann. § 17-27-20(b). As the PCR court noted, trial counsel and the petitioner filed speedy trial motions in this case which the trial judge denied. (PCR Tr. 91-92; Tr. 8-10). Reviewing this issue as a direct appeal issue, the claim is without merit.

The United States Supreme Court has set forth a two-prong inquiry when pre-indictment delay is alleged to violate due process. First, the petitioner must show the delay caused substantial actual prejudice to his right to a fair trial. If so, the court then must consider the prosecution's reasons for the delay and balance the justification for the delay with any prejudice to the defendant. If the court finds the delay was an intentional device to gain a tactical advantage over the accused, the court should dismiss the indictment. Howell v. Barker, 904 F.2d 889 (4th Cir. 1990). Here, the petitioner had failed to show actual substantial prejudice by the delay. Specifically, the petitioner has "not established anything other than speculation as to any prejudice." (App. 15.) The petitioner alleges that "the state's witnesses forgot all the exculpatory evidence." (Pet. at 11.) The petitioner does not state what exculpatory evidence the state's witnesses forgot. Mere speculation of what a witness' testimony may be is insufficient to satisfy the burden of showing prejudice. *See id.*

29

Accordingly, the state court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this ground is without merit.

**Ground Five**

In Ground Five, the petitioner asserts that a statement he made was introduced at trial in violation of Miranda v. Arizona, 384 U.S. 436 (1966), and Edwards v. Arizona 451 U.S. 477 (1981), and trial counsel did not object to the admissibility of the statement. (App. 208-209.)[6] The petitioner raised this issue in his direct appeal. However, without an objection at trial, the issue was barred from review on direct appeal. The PCR Court addressed this issue in an ineffective assistance of counsel context. (PCR Order 14.) The PCR Court found that the petitioner failed to meet his burden of proving that trial counsel erred in failing to suppress the statement. (*Id.*)

In any event, this action is without merit. During the trial, the trial judge held a Jackson v. Denno hearing on the admissibility of the petitioner's written statement. (App. 202-209.) During the hearing, Sgt. Larry Bellew testified that he and Investigator Donohue interviewed the petitioner after he had been arrested for the murder and ABIK. (App. 203.) Sgt. Bellew testified that he

---

[6] Furthermore, the admission of the petitioner's pre-arrest statement presents no Sixth Amendment problems. Massiah v. United States, 377 U.S. 201(1964), and its progeny hold that the Sixth Amendment prohibits the government from deliberately eliciting incriminating evidence from an accused "after he ha[s] been indicted and in the absence of his counsel." Massiah, 377 U.S. at 206. Thus, when the petitioner spoke with police prior to his arrest about wanting to speak to his lawyer before turning himself he could not have invoked his Sixth amendment right to counsel. *See* United States v. Hines, 963 F.2d 255, 256-57 (9th Cir.1992) (explaining that a Fifth Amendment right to counsel under Miranda does not vest until defendant is taken into custody and Sixth Amendment right to counsel does not attach until initiation of first adversarial proceedings against defendant); United States v. Gouveia, 467 U.S. 180, 187 (1984)("The arraignment signals 'the initiation of adversary judicial proceedings' and thus the attachment of the Sixth Amendment.").

advised the petitioner of his <u>Miranda</u> rights and that the petitioner appeared to understand.  Bellew testified that the petitioner did not respond when he asked him if he wanted an attorney. (App. 203-204.)   He testified that the petitioner then signed the waiver and gave a written statement. (App. 205-206.)  The trial found the statement was freely and voluntarily given and admissible. (App. 209.)

The petitioner appears to be relying on a pre-arrest conversation he had with Donohue as evidence that he requested an attorney.  Investigator Donohue testified that prior to the petitioner's arrest, he and the petitioner had a telephone conversation during which Donohue tried to get the petitioner to turn himself into the police.  Donohue testified that the petitioner said that he wanted to first talk with John Mauldin, a Greenville County Public Defender, who was out of town.  (App. 291; 302-303.)  Donohue testified that the petitioner had called Mauldin's office and spoken with someone.  Donohue testified that he later spoke with that person, who was not an attorney, and told him if he knew where the petitioner was he needed to speak with him and tells him to turn himself into the police. (App. 291-292.) Subsequently, the police learned the petitioner's whereabouts. (App. 292-293.)

The first step in a <u>Miranda</u> analysis involves a determination of whether the defendant properly invoked his right to counsel.  An invocation of the right to counsel "must be made in the context of a custodial interrogation in order for the <u>Miranda</u> rights to attach."  <u>Minnick v. Mississippi</u>, 498 U.S. 146, 150 (1990) (holding "once an individual in custody invokes his right to counsel, interrogation must cease until an attorney is present  . . . ")(internal quotation marks omitted).

In Edwards v. Arizona, the United States Supreme Court held that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. The United States Supreme Court has "never held that a person can invoke his Miranda rights anticipatorily, in a context other than 'custodial interrogation'. . . ." McNeil v. Wisconsin, 501 U.S. 171, 182 n. 3 (1991). Because the petitioner was not in custody until later following his arrest, any alleged attempt he may have made to invoke Miranda during an earlier stage of the investigation was ineffective. The petitioner has not presented any evidence to show that he was in custody at the time he stated he wanted to speak with his public defender prior to turning himself into the police. The petitioner has failed to allege an essential element required to invoke Miranda's protections, namely, that he was in custody when he invoked his right to counsel. Accordingly, this issue is without merit and the PCR Court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record.

**Ground Six**

In Ground Six, the petitioner asserts that trial counsel was ineffective for failing to investigate the case. In his supporting facts, the petitioner states "trial counsel did not investigate the third party for consent, the alleged evidence taken from the apartment, the alleged search warrant, the arrest warrants, the indictment, he knew nothing of the state's witnesses or the possible exculpatory witnesses, the EMS crew and the physician. All of these individuals were in contact with [the

victim]. Trial counsel was unprepared for trial and this prejudiced appellant." (Pet. at 20.)[7] In his petition, the petitioner does not elaborate on these claims any further. The PCR Court found trial counsel testimony credible and the petitioner's testimony not credible. (PCR Order at 9.) The PCR court concluded that, based on the trial and PCR record before him, "trial counsel adequately conferred with the Applicant, conducted a proper investigation, and was thoroughly competent in his representation." ( PCR Order 9.)

At the PCR hearing, trial counsel testified he met with the petitioner and discussed the facts of the case, filed discovery motions, reviewed discovery material with the petitioner, and visited the crime scene. (App. 679-85.) Trial counsel testified he did not recall the preliminary hearing, but that he had taken took notes at the preliminary hearing and would have used them to impeach a witness if they testified differently at trial. (App. 674-75.) As for the indictments, trial counsel testified he raised the issue of lack of notice of the indictments and that the trial judge held the petitioner had waived arraignment on the indictments. (App. 657-58) Trial counsel testified he did not notice an error on the indictments relating to the petitioner's name, but that there was no doubt the person in the indictments was the petitioner. (App. 658-59.) The record clearly supports the PCR Court's decision. Additionally even assuming some type of trial counsel error, the petitioner has not shown any prejudice. Accordingly, the PCR Court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this ground is without merit.

---

[7]The undersigned notes that these issues are separately addressed in more detail in Grounds Three, Seven, Eight, and Sixteen.

**Ground Seven**

In Ground Seven, the petitioner alleges trial counsel was ineffective for failing to object to the inadequate notice of the indictment. The PCR Court noted that the petitioner raised this issue to the trial court. (App. 14.) The PCR Court found trial counsel was not deficient in his handling of the issues relating to the indictments. (PCR Order at 9.) The PCR Court noted that the petitioner was well aware of the charges he was facing. (*Id.* at 10.)

As the PCR Court found, the record reflects that, contrary to the petitioner's assertion, trial counsel did object at trial that the petitioner did not receive proper notice of the indictments. (App.14; 38-40.) However, the trial judge denied the motion. (App. 14.) Further, the petitioner has not shown prejudice. Accordingly, the PCR Court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Furthermore, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this ground is without merit.

**Ground Eight**

In Ground Eight, the petitioner alleges that trial counsel was ineffective for failing to object to the defective indictments. In his supporting facts, he states that his full name is Jimmy Gatewood Blakely and the indictments were for a "James Gene Blakely."

At the PCR hearing, trial counsel stated he did not notice the name on the indictment was incorrect, but there was no doubt the defendant referenced in the indictment was the petitioner. (App. 658-659.) As noted above in Ground Seven, the PCR Court found trial counsel was not deficient in his handling of the issues relating to the indictments and the petitioner "was well aware of the charges he was facing in this case, and there was no dispute that the individual in the warrants and indictments was the Applicant. Trial counsel testified as such." (PCR Order 10.)

34

The Due Process Clause requires that a defendant be informed of the charges against him. Hartman v. Lee, 283 F.3d 190, 194 (4th Cir. 2002) The Sixth Amendment imposes a similar requirement. *Id.* More particularly, "[v]ariances and deficiencies in state indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process." Ashford v. Edwards, 780 F.2d 405, 407 (4th Cir.1985). Here, the indictments provided adequate notice to the petitioner that he faced charges of murder and ABIK. Further, there was no question that the petitioner was in fact the proper defendant in this case. During his testimony, he admitted he shot the victims, but he alleged it was an accident and/or self-defense. Additionally, the undersigned notes that at trial, the State informed the trial court that the petitioner had numerous aliases listed on his National Crimes Computer Record, one of which was James Gene Blakely. (App. 378-379.) Trial counsel was not deficient and the petitioner has also failed to show any prejudice. Therefore, based on the foregoing, the undersigned finds that the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this ground is without merit.

**Ground Nine**

In Ground Nine, the petitioner alleges that trial counsel was ineffective for failing to request jury charges on simple assault and battery and accident.[8] At the PCR hearing, trial counsel testified that he never thought accident was a viable defense. Further, he testified that there was no way to reconcile the petitioner's allegations that he should have requested charges for both simple assault

---

[8] Also, to the extent petitioner claims trial court error relating to Ground 9, it is procedurally barred because he failed to raise it on direct appeal.

35

and battery and accident. (App. 74, 83.) The PCR Court found the petitioner was not credible and trial counsel was credible. (PCR Order at 18.) The PCR found that the evidence did not support jury charges on simple assault and battery or accident. (*Id*. at 19.) The PCR Court concluded that trial counsel was not deficient in failing to request these charges. (*Id*. at 20.)

As a defense to ABIK, the petitioner testified he accidentally shot his ex-girlfriend, Sarah Ann Moss, when she came up behind him after he had shot Moss's friend, Steve. The PCR court found the evidence presented at trial did not support or justify jury charges of simple assault and battery and/or accident. (PCR Order at 19-20.) He found there was no evidence that the shooting of the second victim was accidental. *See* State v. Goodson, 440 S.E.2d 370 (S.C. 1994) (finding for a homicide to be deemed an accident, there must be evidence the killing was unintentional, the defendant was acting lawfully, and due care was exercised in the handling of the weapon). Further, he found there was no evidence that the petitioner had committed a simple assault and battery entitling him to a charge on simple assault and battery.

The trial court is required to charge a jury on a lesser-included offense "if there is any evidence from which it could be inferred the lesser, rather than the greater, offense was committed." State v. Gourdine, 398, 472 S.E.2d 241, 242 (S.C. 1996). However, the trial court should refuse to charge on a lesser-included offense where there is no evidence that the defendant committed the lesser rather than the greater offense. State v. Smith, 446 S.E.2d 411, 413 (S.C. 1994).

A homicide will be excusable on the ground of accident when 1) the killing was unintentional, 2) the defendant was acting lawfully, and 3) due care was exercised in the handling of the weapon. State v. Goodson, 440 S.E.2d 370 (S.C. 1994). A homicide is not excusable on the ground of accident unless it appears that the defendant was acting lawfully. Arnette v. State, 413

36

S.E.2d 803 (S.C. 1992); State v. McCaskill, 387 S.E.2d 268 (S.C. 1990).  The petitioner testified at trial that the shooting "was an accident because I didn't know who was running behind me." (App. 433.) He testified that when he shot Moss, it was an automatic reaction and he shot her in the leg because he did not know who was behind him and so he shot with the gun pointed low.  (App. 433.)  Further, the petitioner testified that he pulled the trigger. (App. 433.)  He stated he had to pull the trigger and that he just did not think about it.  (*Id.*)  There was no evidence the gun went off accidentally.  Therefore, the petitioner was not acting lawfully, since he shot at the victim, unless he was acting in self-defense.  Further, as discussed below, there was no evidence that the petitioner was acting in self-defense when he shot Moss.

To establish self-defense, there must be evidence 1) appellant was without fault in bringing on the difficulty; 2) appellant actually believed he was in imminent danger of losing his life or sustaining serious bodily injury; 3) a reasonably prudent person of ordinary firmness and courage would have entertained the same belief; and 4) appellant had no other probable means of avoiding the danger.  State v. Bruno, 473 S.E.2d 450 (S.C. 1996).  The petitioner testified he heard someone behind him and he "just turned and shot." (App. 433.)  The petitioner did not testify that he believed his life was in danger or he might sustain serious bodily injury, his testimony was that the shooting of Moss was a "reflex" or an accident. There was no evidence that the petitioner was acting in self-defense when he shot Moss and therefore he would not have been entitled to a charge on accident or self-defense.

Further, the petitioner was not entitled to a charge on simple assault and battery.   "Simple assault and battery is an unlawful act of violent injury to another, unaccompanied by any circumstances of aggravation."  State v. Sprouse, 478 S.E.2d 871, 877 (S.C. Ct. App.1996).  As

stated above, the petitioner admits he shot Moss.    There was no evidence tending to show the petitioner was guilty only of simple assault and battery.    State v. Patterson, 522 S.E.2d 845 (S.C. Ct. App.1999).  Examples of circumstances of aggravation include the use of a deadly weapon, the infliction of serious bodily injury, the intent to commit a felony, great disparity between the ages and physical conditions of the parties involved, and the difference in the sexes.  State v. Tyndall, 518 S.E.2d 278 (S.C. 1999). The undisputed evidence establishes at least one aggravating circumstance (use of a deadly weapon) which negates the conclusion that the petitioner had committed only a simple assault and battery.  There is simply no evidence the petitioner committed the lesser offense of simple assault and battery, rather than ABIK.  Patterson, 522 S.E.2d at 854.

Thus, based on the foregoing, trial counsel was not deficient in failing to request jury charges on accident and simple assault and battery and, furthermore, the petitioner has also failed to show any prejudice.   Accordingly, the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law.  Further, it was not based upon an unreasonable determination of facts in light of the state court record.  Thus, this ground is without merit.

**Ground Ten**

In Ground Ten, the petitioner contends trial counsel was ineffective for failing to object to the lack of chain of custody for the gun, the clothing, and the projectile.  At the PCR hearing, trial counsel testified there was no reason to challenge the chain of custody because the petitioner admitted to the two shootings. (App.679-80.)   Noting that the petitioner had admitted to shooting the victims, the PCR Court found that the petitioner had failed to articulate why trial counsel should have challenged the chain of custody of the bullets. (PCR Order at 16.)  The PCR Court concluded that the petitioner had failed to meet his burden of proving this allegation. (*Id.*)

In his memorandum opposing summary judgment, the petitioner alleges that the decedent had been left in the street and "[t]here was a probability that [another] individual took the knife or even shot [him]." (Pet'r's Mem. Opp. Summ. J. Mot. at 38.)  Clearly, this statement is pure speculation on the petitioner's part.   Further, this argument does not support his contention that trial counsel erred by failing to object to the chain of custody regarding the gun, clothing, and projectile.   The petitioner has not shown that if the trial counsel had objected that the evidence would have been suppressed.   Thus, trial counsel was not deficient and the petitioner has also failed to show any prejudice.  Accordingly, this issue is without merit and the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law.  Further, it was not based upon an unreasonable determination of facts in light of the state court record.

**Ground Eleven**

In Ground Eleven, the petitioner alleges that trial counsel was ineffective for failing to object to the trial court's jury instruction on malice.  The petitioner alleges the trial court improperly charged that malice is implied from the use of a deadly weapon.  The petitioner also argues the trial court gave the jury a fourteen-page jury instruction on malice which he contends is excessive.  (Pet. 23.)   The PCR court found the charge was proper and did not prejudice the petitioner.  (PCR Order at 21.)

In his memorandum opposing summary judgment, the petitioner contends that the trial court's charge on malice impermissibly shifted the burden.   He argues that using the terms "presumption," "rebutable," "implied," and "presumed" denotes a rebutable presumption rather than a permissible inference.   (Pet'r's Mem. Opp. Summ. J. Mot. at 39.)

39

First, the undersigned notes that having reviewed the trial court's entire charge on malice, the terms to which the petitioner objects were not used. (App. 507-521.) The trial court correctly instructed that "the use of a deadly weapon permits you to infer malice, but it does not require you to infer malice." (App. 509.) The case law is clear that the use of a deadly weapon gives rise to a permissive inference of malice. State v. Kelsey, 62, 502 S.E.2d 63, 69 (S.C. 1998); State v. Von Dohlen, 471 S.E.2d 689, 697 (S.C. 1996). As for the length of the charge, contrary to the petitioner's assertion, the trial court did not give a fourteen-page instruction solely on malice. The trial court initially defined murder and malice and then he also gave instructions on voluntary manslaughter, ABIK, and ABHAN. In instructing on these offenses, it was necessary to discuss how malice is an element of each. Therefore, Trial counsel was not deficient and the petitioner has also failed to show any prejudice. Accordingly, the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this ground is without merit.

**Ground Fourteen**

In Ground Fourteen, the petitioner alleges trial counsel was ineffective for failing to safeguard the petitioner's right to a fair and impartial jury. The petitioner contends that trial counsel should have had requested that a juror, Donnie Heard, be removed because he had prior drug charges and he "was a plant by the prosecutor." (Pet. at 24.)

After the jury was sworn, the solicitor informed the trial judge that, according to an investigator, one of the jurors was "under sentence right now on federal drug charges." The trial court asked the juror several voir dire questions, determined the juror did not have any outstanding charges, and allowed him to serve on the jury. (App. 34-37.) At the PCR hearing, trial counsel

testified he did not recall an issue concerning a juror with a criminal record, but that he believed having such a juror on the panel would have been advantageous the petitioner. (App. 663.) The PCR Court found the petitioner was not credible and did not meet his burden of proving that trial counsel was ineffective for allowing a juror with a criminal record to be on the jury. (PCR Order at 13-14.) The PCR Court also found that the petitioner had failed to show any prejudice. (*Id.* at 14.) Other than his own self-serving and speculative statements, the petitioner has not offered evidence in support of this allegation. The only evidence in the record is that this juror did not have any outstanding criminal charges. (App. 34-37.) Further, there is absolutely no evidence in the record that this juror was a "plant by the prosecutor." Thus, trial counsel was not deficient and the petitioner has also failed to show any prejudice. Accordingly, the PCR Court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Furthermore, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this ground is without merit.

**Ground Fifteen**

In Ground Fifteen, the petitioner alleges the evidence introduced at trial was hearsay and not proven to belong to the petitioner. Specifically, the petitioner alleges that evidence seized from the apartment pursuant to the search warrant was not proven to be his by competent evidence and was based upon hearsay. The record reveals that counsel did not object to their admission. (App. 293-295.) This issue was raised in the PCR appeal as an ineffective assistance of counsel claim. The PCR Court found no error and held the petitioner lacked standing to challenge whether the resident of the apartment had consented to the search of the apartment. (PCR Order at 14.) First, the undersigned notes the petitioner never states what evidence he is referencing. Second, as

discussed in Ground Three, the PCR court's decision regarding the search of the apartment was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this ground is without merit. Accordingly, this issue is also without merit.

**Ground Sixteen**

In Ground Sixteen, the petitioner alleges trial counsel was ineffective for failing to subpoena the medical records of one of the victims, Sarah Ann Moss. He speculates that the medical records might show that she was on medications and that she "was so high on drugs, until she did not know where she was shot." Trial counsel stated he did not subpoena Moss's medical records because he did not feel it was necessary. (App. 680, 683-683.) Though not specifically addressed, the PCR judge found that, based on the trial and PCR record before him, "trial counsel adequately conferred with the Applicant, conducted a proper investigation, and was thoroughly competent in his representation." (PCR Order 9). Clearly, speculation as to what the medical records might show, will not support a finding that the petitioner was prejudiced by trial counsel's failure to obtain the victim's medical records. Trial counsel was not deficient and the petitioner has also failed to show any prejudice. Therefore, the PCR court's decision regarding the search of the apartment was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Accordingly, this issue is without merit.

**Ground Seventeen**

In Ground Seventeen, the petitioner contends that he did not want to go to trial and that trial counsel coerced him to waive arraignment. The PCR Court found that the petitioner waived his

arraignment on both indictments at trial.  Thus, the PCR Court concluded that trial counsel was not deficient and that the petitioner had failed to prove prejudice on this issue.  (PCR Order at 15.)

Trial counsel testified the petitioner waived his arraignment before the trial judge.  (App. 657.)   The record shows that the petitioner clearly waived arraignment on the indictments at his trial.  (App.38-39.)   Further, when the petitioner proceeded to trial, he waived any objection to a failure to have an arraignment.  State v. Arial, 426 S.E.2d 751, 753 (S.C. 1993)(holding that by proceeding to trial, defendant waived any objection regarding sufficiency of court's inquiry regarding waiver of arraignment).  Additionally, the United States Supreme Court has held that an arraignment is a "mere formality" and that a failure to arraign does not violate due process so long as it appears that the accused has had sufficient notice of the accusation and an adequate opportunity to defend himself in the prosecution. Garland v. Washington, 232 U.S. 642, 645 (1913).  The record shows that the petitioner had notice of the charges and an adequate opportunity to defend himself.  Accordingly, the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law.  Further, it was not based upon an unreasonable determination of facts in light of the state court record.  Thus, this issue is without merit.

**Ground Eighteen**

In Ground Eighteen, the petitioner contends that trial counsel was ineffective for failing to object to the indictment on the ground that the prosecutor was the sole witness before the grand jury. During the PCR hearing, trial counsel testified he did not remember raising the issue of who testified before the grand jury. (App. 669.)  The PCR Court noted that the standard practice in South Carolina is for only the State to present evidence to the grand jury citing  State v. Bramlett, 164 S.E. 873 (S.C.

43

1932).  (PCR Order at 10.)   The PCR Court concluded that the petitioner had not met his burden of proving trial counsel erred in failing to object. (*Id.*)

In State v. Anderson, 439 S.E.2d 835 (S.C. 1993), the South Carolina Supreme Court prohibited the practice of prosecutors appearing as the sole witness before a grand jury.  In State v. Whitted, 305 S.E.2d 245, 247 (S.C. 1983), the South Carolina Supreme Court held it "did not contemplate and should not be construed to prohibit the investigative officer . . . from appearing as the sole witness before the grand jury."  Here, there was no evidence that the prosecutor was a witness before the grand jury.  The only evidence in the record regarding who testified before the grand jury comes from the indictment itself and it states that the witness before the grand jury was L.N. Ballew, an investigative law enforcement officer, not a solicitor.  (App. 705; Pet. Exs. L, N.) As investigative officers are not prohibited from appearing before the grand jury, Whitted, 305 S.E.2d at 247, this issue is without merit.  Thus, trial counsel was not deficient and the petitioner has also failed to show any prejudice.  Accordingly, the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law.  Further, it was not based upon an unreasonable determination of facts in light of the state court record.

**Ground Twenty**

In Ground Twenty, the petitioner claims that a witness, Tina Downs, testified that the prosecutor told her what to say.   The PCR Court found that the petitioner had failed to meet his burden of proving prosecutorial misconduct based upon his allegation of perjured testimony. (PCR Order at 21).

At the PCR hearing, trial counsel testified he was not aware that any perjury had been committed during the trial.  At the PCR hearing, the petitioner requested the court reporter tapes

44

from the trial. (App. 593.)  The PCR court denied the motion. (*Id.*)  The record does not substantiate a claim of perjured testimony.  Further, the trial record contains a certification from the court reporter, Ann Dickey Campbell, that the transcript provided was a true, accurate and complete transcript.  (App. 554.)    Accordingly, the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law.  Further, it was not based upon an unreasonable determination of facts in light of the state court record.  Thus, this issue is without merit.

**Ground Twenty-One**

In Ground Twenty-One, the petitioner alleges trial counsel was ineffective for failing to obtain a transcript of the preliminary hearing.  The petitioner contends trial counsel should have had the preliminary hearing transcript so he could impeach the detective at trial.  (App. 636-37.)   The PCR court denied relief on this claim. (PCR Order 10.)

At the PCR hearing, trial counsel testified he did not recall the preliminary hearing, but that he took notes at the hearing and would have used them to impeach a witness if they testified differently at trial.  (App. 674-75.)     The petitioner is merely speculating that the witness testified differently at trial than he did at the preliminary hearing. There is no evidence in the record to support this claim.  Therefore, trial counsel was not deficient and the petitioner has also failed to show any prejudice.   Accordingly, the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law.  Further, it was not based upon an unreasonable determination of facts in light of the state court record.  Thus, this issue is without merit

**Ground Twenty-Two**

In Ground Twenty-two, the petitioner contends trial counsel was ineffective for failing to have investigated the cause of the decedent's death. The petitioner speculates the victim, Steve, could have died because of negligent medical treatment.   The PCR Court ruled that the petitioner had failed to meet the burden of proof as to this allegation.  (PCR Order at 10.)

Trial counsel testified that he had proof of death so that was not in issue because there was no doubt the victim was dead.  (App. 660.)   Further, at trial, Dr. Michael Ward, a forensic pathologist,  testified that the cause of death was "the result of a gunshot wound to the chest." (App. 345.)  Other than the petitioner's own self-serving speculation, there is no evidence that the decedent died as a result of any medical negligence.  Thus, trial counsel was not deficient and the petitioner has also failed to show any prejudice. Accordingly, the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law.  Furthermore, it was not based upon an unreasonable determination of facts in light of the state court record.  Thus, this issue is without merit.

**Ground Twenty-Three**

In Ground Twenty-Three, the petitioner alleges the trial court was ineffective for failing to object to the trial court's ruling on his motion for a fast and speedy trial. Issues that relate to trial court error cannot be raised in state PCR proceedings absent a claim of ineffective assistance of counsel. Drayton v. Evatt, 430 S.E.2d 517, 520 (S.C. 1993) (holding in PCR petitioner cannot assert any issues that could have been raised at trial or on direct appeal).  The PCR court found this issue was a direct appeal issue and not cognizable in a PCR action pursuant to S.C. Code Ann. § 17-27-20(b).  Even if this issue was raised in the context of an ineffective assistance of counsel

claim, as the PCR court noted, trial counsel and the petitioner filed speedy trial motions in this case which the trial judge denied. (PCR Tr. 91-92; Tr. 8-10).

The United States Supreme Court has set forth a two-prong inquiry when pre-indictment delay is alleged to violate due process. First, the petitioner must show the delay caused substantial actual prejudice to his right to a fair trial. If so, the court then must consider the prosecution's reasons for the delay and balance the justification for the delay with any prejudice to the defendant. If the court finds the delay was an intentional device to gain a tactical advantage over the accused, the court should dismiss the indictment. Howell v. Barker, 904 F.2d 889 (4th Cir. 1990). Here, the PCR court determined that the petitioner had failed to show actual substantial prejudice by the delay. Specifically, the PCR court held that the petitioner had "not established anything other than speculation as to any prejudice." (App. 15.)

The petitioner alleges that "the state's witnesses forgot all the exculpatory evidence." (Pet. at 11.) The petitioner does not state what exculpatory evidence the state's witnesses forgot. In a PCR proceeding, the applicant bears the burden of establishing that he is entitled to relief. Caprood v. State, 525 S.E.2d 514, 517 (S.C. 2000). "Mere speculation of what a witness' testimony may be is insufficient to satisfy the burden of showing prejudice in a petition for PCR." Porter v. State, 629 S.E.2d 353, 358 (S.C. 2006). Trial counsel was not deficient and the petitioner has also failed to show any prejudice. Accordingly, the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Furthermore, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this issue is without merit.

**Ground Twenty-Four**

In Ground Twenty-Four, the petitioner contends that trial counsel was ineffective for failing to object to the surviving victim, Moss, committing perjury in her testimony through several inconsistent statements. He contends that trial counsel also failed to allege prosecutorial misconduct arising from it. The PCR Court found that the petitioner failed to meet his burden of proof regarding this allegation. (PCR Order at 22).

The petitioner does not point to any specific testimony as support for this allegation. In any event, "[m]ere inconsistences in testimony by government witnesses do not establish the government's knowing use of false testimony." United States v. Griley, 814 F.2d 967, 971 (4th Cir.1987). *See also* Alonzo v. United States 2006 WL 470605 (S.D.W.Va. 2006) ("testimonial inconsistencies alone do not amount to perjury")(unpublished). There is no evidence in the record of any perjured testimony from Moss. Further, the record reveals that trial counsel conducted a vigorous cross-examination of Moss. (App. 82-110.) Consequently, the petitioner has not shown that trial counsel was deficient. Nor has the petitioner shown any prejudice. Accordingly, the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this issue is without merit.

**Ground Twenty-Five**

In Ground Twenty-Five, the petitioner alleges trial counsel was ineffective for failing to object to his statement being introduced because he was illegally arrested when he was a guest at a third party's house in violation of the Fourth Amendment. The PCR court found the petitioner had failed to meet his burden of proving trial counsel should have challenged his arrest because it was

done without a warrant.   The PCR Court noted that the evidence is clear there were arrest warrants in this case and that the petitioner had been served with those warrants.  (PCR Order 14-15.)

As noted in the discussion of Ground Three above, the arrest warrants are part of the record and the investigator at trial testified he obtained arrest warrants for the petitioner the night of the shooting and attempted to locate him.  (App. 288, 705). Therefore, trial counsel was not deficient and the petitioner has also failed to show any prejudice.   Accordingly, the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law.  Further, it was not based upon an unreasonable determination of facts in light of the state court record.  Thus, this issue is without merit.

**Ground Twenty-Six**

In Ground Twenty-Six, the petitioner alleges trial counsel was ineffective for failing to consult him on the voluntary manslaughter issue.  He contends that he had previously informed trial counsel he did not want a voluntary manslaughter charge.  The PCR Court found the petitioner's testimony that he told trial counsel not to request the manslaughter charge not credible.  (PCR Order 18, 20.)

At the PCR hearing, trial counsel did not recall whether he discussed his decision to request a voluntary manslaughter charge with the petitioner, but said there was a factual basis to support the charge.  (App.672-74; 683.)   Trial counsel did not recall the petitioner opposing the voluntary manslaughter charge. (App.672-74.)   Further at the PCR hearing, trial counsel testified that he believed the petitioner would have been convicted of murder if he had not received a voluntary manslaughter charge.  (App.672-74.)

49

The evidence at trial supported a charge of voluntary manslaughter. State v. Cooley, 536 S.E.2d 666 (S.C. 2000) (holding that, in order to charge voluntary manslaughter, the evidence presented must support a finding of legal provocation). See Drayton v. Evatt, 430 S.E.2d at 522 (finding great deference is given to PCR judge's findings on the credibility of witnesses). Further, the petitioner has failed to prove that he was prejudiced by trial counsel's performance. Accordingly, the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Furthermore, it was not based upon an unreasonable determination of facts in light of the state court record. Thus, this issue is without merit.

**Ground Twenty-Seven**

In Ground Twenty-Seven, the petitioner contends trial counsel was ineffective for failing to request a jury instruction stating that the petitioner had no duty to retreat. The petitioner contends that because he lived on the same street as the surviving victim, Sara Moss, where the shooting occurred, he did not have a duty to retreat. Additionally, he claims that because of a disability which requires he walk with a cane, he did not have a duty to retreat because he would have been unable to outrun anyone. The PCR Court found that trial counsel was not ineffective for failing to request a charge that the petitioner did not have a duty to retreat. (PCR Order at 19.) The PCR Court noted that the shooting occurred outside of the ABHAN victim's house and not on the petitioner's property. (Id.)

The only evidence presented at trial was that the shooting occurred in the street outside the victim Sara Moss's home. (App.74-79;122-23;.146-48; 655-56). The petitioner lived on the same street. As the defense of habitation provides, defending one's home or premises means ending an unwarranted intrusion through the use of reasonably necessary means of ejection. State v. Bradley,

120 S.E. 240, 242 (S.C. 1923). The absence of a duty to retreat extends only to the curtilage of one's home.  State v. Wiggins, 500 S.E.2d 489 (S.C. 1998). "'Curtilage' includes outbuildings, yard around dwelling, garden."  *Id.* at 494 n.15 (internal citation omitted).  Not only does the evidence in the record show that the petitioner shot the decedent in the street, but in front of the victim's house,  not the petitioner's home.  Further, the petitioner testified at trial that his house was a five minute walk from Moss's house.  (App. 403, 405.)  The petitioner argues because he lived on the same street, it was the curtilage of his house.  There is no case law which supports such a proposition.  Because the petitioner was not on his property, and in fact, was a five-minute walk from his property, he clearly had a duty to retreat. *See* State v. Fuller, 377 S.E.2d 328, 331 (1989). Further, there was no evidence at trial that the petitioner was physically unable to retreat.  Thus, trial counsel was not deficient and the petitioner has also failed to show any prejudice.   Accordingly, the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law.  Furthermore, it was not based upon an unreasonable determination of facts in light of the state court record.  Thus, this issue is without merit.

**Ground Twenty-Eight**

In Ground Twenty-Eight, the petitioner alleges trial counsel was ineffective for failing to object to the arrest warrants because they were defective and altered.  The PCR Court found that the petitioner had failed to meet his burden on this issue. (PCR Order at 14).  As stated above in Ground Three, the record is clear that the petitioner was properly served with arrest warrants.  Further, there is no evidence that the warrants were altered or defective.  Thus, trial counsel was not deficient and the petitioner has also failed to show any prejudice.  Accordingly, the PCR Court's decision was not contrary, nor an unreasonable application of, clearly established federal law.   Furthermore, it was

51

not based upon an unreasonable determination of facts in light of the state court record. Thus, this issue is without merit.

**Ground Twenty-Nine**

In Ground Twenty-Nine, the petitioner re-asserts several claims. He again alleges that the trial judge erred when he advised the jury that he had pled not guilty to the charges because he had only been arraigned on one charge. He also reasserts his claim that the judge misstated the law on self defense when he stated that "one cannot through his own fault bring on a difficulty and then claim self-defense." Further, he asserts that it was a misstatement of law for the judge to state malice is implied from the use of a deadly weapon and overruled counsel objection. These claims are also raised in Grounds Eleven (malice charge), Seventeen (arraignment), and Nineteen (self-defense charge). As discussed above Grounds Eleven and Seventeen are without merit and Ground Nineteen is procedurally barred.

**Ground Thirty**

In Ground Thirty, the petitioner alleges trial counsel was ineffective for failing to object to evidence of previous threats the petitioner made towards the victim. The PCR Court in the petitioner's first PCR proceeding found trial counsel should have objected to this evidence because it impermissibly placed respondent's character in issue and granted the petitioner relief. However, the South Carolina Supreme Court reversed the grant of relief. Blakely v. State, 602 S.E.2d 758 (S.C. 2004).

As the South Carolina Supreme Court held, it is well-settled that evidence of previous threats made by the defendant to the decedent is admissible to show malice. State v. Lee, 178 S.E.2d 652 (S.C. 1971)("The general rule is that evidence of previous threats and hostile declarations by the

52

accused against the deceased is admissible to show malice, premeditation and state of mind. . .") Further, as the court also held, pursuant to Rule 404(b), SCRE, this type of evidence is admissible as evidence of intent.   Rule 404(b) provides that: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible to show motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent."   Therefore, trial counsel was not deficient and the petitioner has also failed to show any prejudice.   Accordingly, the South Carolina Supreme Court's decision was not contrary, nor an unreasonable application of, clearly established federal law. Further, it was not based upon an unreasonable determination of facts in light of the state court record.  Thus, this issue is without merit.

**Ground Thirty-One**

In Ground Thirty-One, the petitioner complains about the arrest warrants and the times stated on the warrants. As discussed above in Ground Three, these allegations are without merit.

### IX. CONCLUSION

Based on the foregoing, it is recommended that respondent's motion for summary judgment (docket entry # 39) be GRANTED and the petitioner's Petition for Writ of Habeas Corpus should be denied, and the petition dismissed without an evidentiary hearing.  Further, all other pending motions in this case should be DENIED as moot.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

April 16, 2008
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

53